UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHARLES ELMER KOVARY,

                    Petitioner,                    Case No. 2:15-cv-85

v.                                                 Honorable Paul L. Maloney

DUNCAN MACLAREN,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Charles Elmer Kovary is incarcerated with the Michigan Department of Corrections at the Thumb Correctional Facility (TCF) in Lapeer County, Michigan.  Following a five-day jury trial in the Grand Traverse County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2).  On March 23, 2010, the court sentenced Petitioner as a fourth habitual offender, under Mich. Comp. Laws § 769.12, to respective prison terms of life imprisonment for one count of CSC-I, 40 to 80 years for the other CSC-I count, and 25 to 60 years for first-degree home invasion.

On June 24, 2015, Petitioner filed his initial habeas corpus petition raising two grounds for relief, as follows:

   I.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness.  Specifically, trial counsel failed to investigate [an] alibi witness, and failed [to] impeach [the] testimony of Corey Riggs implicating Petitioner.

II.     Trial counsel was constitutionally ineffective for failing to object to admission of . . . the 1995 transcript of an unavailable "other acts" witness [which] was read into the record[.]  [T]he prior testimony was inadmissible under MRE 804(B)(1) . . . [and] denied [Petitioner] his Sixth Amendment right of confrontation.

(Pet., ECF No. 1, PageID.7, 10.)  By way of a supplement, Petitioner has raised an additional issue:

III.    [Was] trial counsel ineffective for failing to re-test the State's inconclusive nuclear DNA analysis of [the] perpetrator's two semen stains with mitochondrial DNA analysis that [would] exclude Petitioner as the source?

(Memo. in Support of Mot. to Amend, ECF No. 21, PageID.1615.)

Respondent has filed an answer to the initial petition (ECF No. 10) stating that the grounds should be denied because they are noncognizable, meritless, and/or procedurally defaulted.  Respondent also filed an answer to Petitioner's supplement (ECF No. 27) stating that Petitioner's third ground for habeas relief should be rejected as untimely and meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), as set forth fully below, I find that the grounds are noncognizable, untimely, procedurally defaulted, and/or meritless.  Accordingly, I recommend that the petition be denied.

<u>**Discussion**</u>

### I.    Factual allegations

In Petitioner's brief on direct appeal, he described the facts underlying his convictions by summarizing the trial testimony as follows:

At trial, complainant Monica Richardson testified that in 2009 she ran the Fireplace Inn in Karlin, Michigan, and lived in an apartment above the inn.  On the night of September 27, 2009, Ms. Richardson was asleep in her bed when someone wearing a hoodie entered her bedroom and attacked her, hitting, her, grabbing her by the hair and forcing her to engage in two acts of sexual penetration.  Although Ms. Richardson did not see the face of the man who attacked her, she saw his outline,

and she testified that he was thin and about 6'1" tall.  A second person kicked her in the side of the head while she was on the floor.  (T I 162-167.)

The first assailant forced her to go outside, and he tried to put her into a dark-colored vehicle that could have been a jeep, but she got away from him temporarily. He caught her and returned her to the apartment bathroom, where he washed her off and apologized, stating this was the second time he "had a mistaken identity." (T I 171-175.)

Ms. Richardson said that she could not see the assailant because he had put some material over her head, but she thought she recognized his voice as that of a man whose wedding reception she had worked on and attended just a few weeks earlier. She knew that man as "Chaz" and had seen him and heard his voice three or four times prior to the wedding reception.  (T II 166, 170, 186-188.)

Ms. Richardson reported that in the course of the attack she suffered a broken nose, nerve damage to the neck and anal tearing.  (T I 184.)  These injuries were confirmed by Dr. Kevin Omilusik.  (T II 86-87.)

Corey Riggs, who described himself as a "professional alcoholic" (T III 362), testified that he had entered into a plea agreement under which criminal sexual conduct charges against him were dropped, and he pleaded guilty to one count of first-degree home invasion and agreed to testified against Mr. Kovary at this trial. At the time of his testimony, Mr. Riggs had been sentenced to 7-20 years for the home invasion.  (T III 333-334.)

Mr. Riggs said that on the night of September 28, Defendant Kovary arrived at his home driving a purple jeep.  Defendant was angry at his wife and had been drinking. In the time they were together that night, Defendant Kovary drank one glass of whiskey and a half a case of beer.  They stopped at the homes of two friends, Troy Katz and Michael Christian, and then drove on to the Fireplace Inn where they entered an upstairs apartment through an unlocked door. (T III 333-342; T II 215-216, 227, 229.)  Although Mr. Riggs testified to leaving the apartment at least three times during the course of the incident, he also testified that he observed Charles Kovary hit Ms. Richardson and force her to engage in acts of sexual penetration. Mr. Riggs kicked Ms. Richardson in the side of the head.  (T III 342-349.)  At one point, Mr. Kovary brought Ms. Richardson outside to the jeep and wanted to take her with them, but Mr. Riggs objected, and Mr. Kovary took Ms. Richardson back upstairs.  (T III 452.)  Mr. Kovary removed some clothing and a towel from Ms. Richardson's apartment, and later Mr. Riggs burned the items at Mr. Kovary's direction.  (T III 453, 455.)

Christopher Barsheff of the Grand Traverse Sheriff's Department collected evidence at the scene.  On October 1, 2009, he examined the purple jeep, a vehicle

3

Defendant was known to drive (see T II 223-224), and documented the tread patterns on the jeep's tires.  (T II 242, 245-246. 264, 267).   A forensic scientist who testified as an expert in tire track impression analysis testified that the tread impressions on the jeep could not be identified as matching tread impression found at the scene (T II 295, 299), and a different forensic scientist, who testified as an expert in DNA analysis, said she tested numerous items taken from the apartment, and the only DNA she found was that of Monica Richardson.  (T II 318, 323-324.)

Karen Kovary declined to testify against her husband, Charles Kovary.  (T III 390-391.)

The 1995 preliminary examination testimony of Lynn Moore in the case of *People v Charles Kovary*, Grand Traverse District Court No 95-7008-FY, was read into the record over defense objection.  The testimony was not transcribed into this record, but the July 28, 1995, preliminary examination transcript was marked as an exhibit and made a part of the record. (T II 273-279.) . . . Lynn Moore testified that on June 23, 1995, she was living at the Phoenix House, a residential substance abuse facility for women in Traverse City.  She shared her bedroom there with a roommate.  She woke up in the middle of the night to find a man pulling her nightgown up as he held her down on her bed.  The man's pants were down around his knees (PET 4-5, 25).  He mumbled something like, "God, I got the wrong house."  Ms. Moore chased the man out of her bedroom, down the stairs and out to the street (PET 6).  She identified Charles Kovary as that man, and she testified that on the day before the preliminary examination she had picked him out of a police lineup (PET 7).

Deputy Sheriff Matthew Jerome testified for the defense that when he first questioned Ms. Richardson after the 2009 assault she said she did not know who her assailant was, but when he interviewed her a second time in the hospital, she said she recognized her assailant as Defendant Kovary by his voice.  (T III 408-409.)

Dr. Robert Shomer, a psychologist, testified as a defense expert in visual and auditory perception that voice identification is accurate less than 50% of the time, and that stress reduces the accuracy of voice identification.  (T IV 427-429, 435-437.)

The jury initially deadlocked, but after further instruction found Mr. Kovary guilty on all three counts. (T IV 521; T V 532.)

(Pet'r's Appeal Br., ECF No. 11-17, PageID.1183-1186.)

Petitioner, with the assistance of counsel, appealed his convictions raising two issues.  Petitioner has merged those two issues into one issue and presented it as habeas ground II in his petition.  By opinion issued May 31, 2011, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.

Petitioner, again with the assistance of counsel, sought leave to appeal the court of appeals' decision in the Michigan Supreme Court, raising the same issues he had raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-18, PageID.1268.)  By order entered October 24, 2011, the Michigan Supreme Court denied Petitioner's application because the court was "not persuaded that the questions presented should be reviewed." (Mich. Order, ECF No. 11-18, PageID.1264.)

Petitioner then returned to the trial court.  On October 1, 2012, he filed a *pro per* motion for relief from judgment raising three issues: (1) trial counsel rendered ineffective assistance by failing to call a witness to establish Petitioner's alibi and failing to impeach Corey Riggs; (2) the trial court abused its discretion by failing to permit discovery of Corey Riggs' counseling records and presentence report and failing to permit introduction of 404(b) evidence against Riggs; and (3) the prosecutor's closing arguments violated Petitioner's constitutional right to a fair trial when she argued facts not in evidence.  (Pet'r's Mot. for Relief from J. I, ECF No. 11-15, PageID.1099.)  Petitioner's motion issue 1 is also the first ground for relief in his initial habeas petition.

By order entered July 9, 2013, the trial court denied Petitioner's motion because he did not show cause for failing to raise the issues on direct appeal or any resulting prejudice from the failure to raise them.  (Grand Traverse Cty. Cir. Ct. Order, ECF No. 11-16.)  Petitioner sought

leave to appeal the trial court's order in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered June 27, 2014, and April 28, 2015, respectively.  (Mich. Ct. App. Order, ECF No. 11-19, PageID.1363; Mich. Order, ECF No. 11-20, PageID.1426.)

After exhausting his state court remedies, Petitioner filed his initial petition in this Court.  Respondent answered the petition and Petitioner filed a reply to the answer.  The matter was ready for decision when, on January 12, 2017, Petitioner sought a stay to pursue a new issue in the Michigan courts: the mitochondrial DNA evidence issue that is raised as habeas ground III. (Pet'r's Mot. to Stay, ECF No. 15.)   The Court granted Petitioner's motion for stay.  (Order, ECF No. 18.)

Petitioner returned to the trial court and, by way of two motions, raised the mitochondrial DNA issue.  He posited that he failed to raise the issue previously because mitochondrial DNA test results were "new evidence."  (Pet'r's Mot. for Relief from J. II, ECF No. 28-5, PageID.1772, 1777.)  Petitioner argued that there was no requirement that he demonstrate diligence in pursuit of the "new evidence," only that new evidence existed that did not exist before. (*Id*.)  Petitioner sought leave to develop his "new evidence" by pursuing a statutory procedure to conduct mitochondrial DNA tests on a semen-stained towel.  (Pet'r's Pet. Under Mich. Comp. Laws § 770.16, ECF No. 28-2.)  The trial court denied Petitioner leave to conduct new tests on the towel because neither the towel nor the testing method were new—Petitioner was well-aware of the towel at trial and mitochondrial DNA testing existed at the time of trial as well.  (Grand Traverse Cty. Cir. Ct. Order, ECF No. 28-6.)  That court also denied Petitioner's successive motion for relief from judgment for the same reasons: neither the towel nor the testing method were new

6

and, thus, Petitioner had not established cause for failing to raise the issue on direct appeal or his first motion for relief from judgment.  (Grand Traverse Cty. Cir. Ct. Order, ECF No. 28-7.)

Petitioner again sought leave to appeal the trial court's decisions in the Michigan Court of Appeals and the Michigan Supreme Court.  The court of appeals denied leave by orders entered July 14, 2017, and December 14, 2017, and (Mich. Ct. App. Order, ECF No. 28-10, PageID.1924; Mich. Ct. App. Order, ECF No. 28-8, PageID.1788.)  The Michigan Supreme Court likewise denied leave by orders entered July 27, 2018.    (Mich. Order, ECF No. 28-11, PageID.1973; Mich. Order, ECF No. 28-9, PageID.1864.)

Petitioner then returned to this Court and supplemented his petition to include the recently exhausted habeas ground III.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

### A.    Timeliness of the mitochondrial DNA issue

Title 28, Section 2244(d)(1) of the United States Code provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

9

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on October 24, 2011.  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.2.)  The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on January 22, 2012.  Petitioner had one year from January 22, 2012— until January 22, 2013—to file his habeas application.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only state, and not federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").  Petitioner filed his first motion for relief from judgment on October 1, 2012.  By that date, 252 days had run on Petitioner's period of limitation.  However, from the date Petitioner filed his motion to the date the Michigan Supreme Court denied leave to appeal on April 28, 2015, the statute of limitation was tolled.  After the supreme court denied leave, the statute began to run again.  Petitioner filed his first federal habeas petition on June 24, 2015, after another 68 days had run on the period of limitation, leaving only 35 days.

10

The filing of Petitioner's federal habeas petition did not toll the running of the statute. *Duncan*, 533 U.S. at 181-82 (2001) ("We hold that an application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) therefore did not toll the limitation period during the pendency of respondent's first federal habeas petition."). With regard to the issues he raised in the petition, the fact that the period of limitation was no longer tolled did not matter. Petitioner had satisfied the requirements of the statute by timely filing those claims. The one-year statute of limitations applies to each claim in a habeas application, as opposed to the application as a whole. *See Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007); *see also Mardesich v. Cate*, 668 F.3d 1164, 1170 (9th Cir. 2012). Therefore, the filing of Petitioner's federal petition did not stop the running of the statute with respect to claims not raised in the petition and, absent some other reason to toll the statute, the period of limitation expired as to claims not raised in the petition on July 29, 2015.

By motion filed January 13, 2017, Petitioner sought a stay of his petition so that he could return to the trial court and file a motion for relief from judgment based on "new evidence" in the form of the mitochondrial DNA evidence. (Mot. for Stay and Supporting Memo, ECF Nos. 15, 16.) Although the Court granted the motion, the Court did not resolve whether or not the claim Petitioner intended to raise was timely.

Petitioner returned to this Court and proposed an amendment to his petition to raise the mitochondrial DNA claim on August 17, 2018. Rule 2(c) of the Rules Governing § 2254 Cases (Habeas Rules) provides: "The petition must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground . . . ." Habeas Rules 2(c). The habeas statute provides that a habeas petition "may be amended or supplemented as provided in the rules

of procedure applicable to civil actions."  28 U.S.C. § 2242.  Rule 15 of the Federal Rules of Civil Procedure, in turn, provides: "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(1).

The Supreme Court has rejected a broad reading of the relation back rule in habeas cases.  *Mayle v. Felix*, 545 U.S. 644 (2005).  "A claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' will not so relate back."  *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *Mayle*, 545 U.S. at 650).

The crux of Petitioner's new claim is that trial counsel was ineffective for failing to pursue mitochondrial DNA testing on the towel.  Petitioner's earlier claims include ineffective assistance of trial counsel claims; however, those claims have nothing to do with testing of the towel.  The earlier claims focus on counsel's failure to present an alibi witness, failure to effectively cross-examine Corey Riggs, and failure to object to improper argument by the prosecutor.  The fact that all of the claims are "ineffective assistance" claims is not the sort of commonality that supports relation back.  *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 849-51 (6th Cir. 2017), *cert. denied* 138 S. Ct. 101 (2017).  Failure to pursue mitochondrial DNA testing on the towel is a "distinct 'episode,'" *Id.* at 850, from counsel's other instances of ineffective assistance and, therefore, does not arise out of the same conduct, transaction, or occurrence.  "To read the original petition's language more expansively would contravene the Supreme Court's warning against construing 'conduct, transaction, or occurrence' so broadly as to render meaningless AEDPA's statute of limitations."  *Id.* at 851.

Because Petitioner's amendment did not relate back to the initial petition, the claim he raised in the amendment was untimely as of the end of July 2015.  Although 28 U.S.C. § 2244(d)(2) provides that the one-year statute of limitations is tolled while a duly filed petition for state collateral review is pending, the tolling provision does not "revive" the limitations period (i.e., restart the clock); it can only serve to pause a clock that has not yet fully run.  *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001).  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.  *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003).  Even where the post-conviction motion raises a claim of ineffective assistance of appellate counsel, the filing of the motion for relief from judgment does not revive the statute of limitations.  *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon*, 329 F.3d at 490).  Because Petitioner's one-year period expired in 2015, his collateral motion filed in 2017 did not serve to revive the limitations period.

Petitioner's contention that the mitochondrial DNA evidence is "new evidence" implicates another possible trigger of the running of the statute.  Section 2241(d)(1)(D) provides that the statute can begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Under that trigger, the date the period of limitations begins to run is the date when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts.  *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).  "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care."  *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004).

Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Redmond*, 295 F. Supp. 2d at 771 (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999)). "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998)). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant application of § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he took to discover the claims). The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

The "new evidence" here would be the mitochondrial DNA test results if, in fact, such results existed. They do not. The trial court refused Petitioner's request to conduct the tests now because such tests were available when Petitioner was tried. (Grand Traverse Cty. Cir. Ct. Order, ECF No. 28-6.) When raising the issue in the state court, Petitioner acknowledged that he was aware of the semen stained towel at the time of the trial and Petitioner avers that he told counsel to have the towel tested. (Pet'r's Aff., ECF No. 28-5, PageID.1779-1780.) Additionally,

Petitioner claims that he told his appellate counsel about the issue and that he was aware that appellate counsel failed to include the issue on appeal.  (*Id.*)  Even though Petitioner very clearly knew of this issue at his trial and on direct appeal, he offers no excuse for failing to raise the issue in his first motion for relief from judgment.  In the state court, rather than attempting to demonstrate his diligence, Petitioner claimed he was not required to be diligent: "[t]he plain language of MCR 6.502(G)(2) makes no reference to a reasonable diligence requirement . . . ." (Pet'r's Mot. for Relief from J. II, ECF No. 28-5, PageID1772.)

Petitioner bears the burden of proving that he exercised due diligence to warrant application of § 2241(d)(1)(D).  *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006).  Petitioner simply glosses over the diligence requirement in his arguments in this Court.  The information Petitioner has provided, however, reveals that Petitioner was aware of the significance of DNA testing of the towel and counsel's failure to pursue such testing, years ago.  Accordingly, that issue is not "new evidence" that might warrant a later trigger for the running of the statute of limitations.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Keenan*, 400 F.3d at 420; *Allen*, 366 F.3d at 401.  The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court.  *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009).  A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Holland*, 560 U.S. at

649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260.

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case.  The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling.  *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing.").   Moreover, the same lack of diligence that precludes application of § 2244(d)(1)(D), precludes equitable tolling.  Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383, 391-93 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

16

In the instant case, although Petitioner may baldly claim that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable jury would have convicted him.  *Schlup*, 513 U.S. at 329.  Because Petitioner has wholly failed to provide evidence of his actual innocence, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His third habeas claim, therefore, is time-barred.

## B.      Confrontation

In Petitioner's second habeas issue he claims he was denied his right to confront the witnesses against him when the trial court permitted the preliminary examination testimony of witness Lynn Moore, from a 1995 criminal prosecution of Petitioner, into the trial record. Petitioner attached the preliminary examination transcript to his direct appeal brief.  (*People v. Kovary*, Grand Traverse Cir. Ct. Case No. 95-7006-FY, Prelim. Exam Tr., ECF No. 11-17, PageID.1197-1229.)  Petitioner's counsel objected to admission of the evidence under Michigan Rule of Evidence 404(b) regarding "other bad acts."  The trial court overruled that objection. Petitioner contends counsel should have objected for two additional reasons:  (1) admission of the preliminary examination testimony violated Petitioner's Confrontation Clause rights;  and (2) admission of the transcript excerpts did not comply with the requirements of Michigan Rule of Evidence 804(b)(1) regarding the hearsay exception for former testimony.

The Michigan Court of Appeals rejected Petitioner's Confrontation Clause challenge:

> A defendant has a right under the state and federal constitutions to confront witnesses against him.  *People v Whitfield*, 425 Mich. 116, 124 n. 1; 388 N.W.2d 206 (1986); *People v Ramsey*, 385 Mich. 221, 224-225; 187 N.W.2d 887 (1971). Essentially, the Confrontation Clause bars the admission of testimonial hearsay of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination.  *People v Payne*, 285 Mich. App. 181, 197; 774 N.W.2d 714 (2009), citing *Crawford v Washington*, 541 U.S. 36, 53-54; 124 S. Ct. 1354; 158 L. Ed. 2d 177 (2004) and *People v Walker*, 273 Mich. App. 56, 60-61; 728 N.W.2d 902 (2006).  Testimonial statements cover,

at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68.

The record reflects that Moore was deceased at the time of the trial in the case at bar. Hence, defendant concedes that Moore was unavailable as a witness. See MRE 804(a)(4). Defendant also concedes that Moore's preliminary examination testimony in defendant's previous case was testimonial. We note that defendant cites no applicable authority to support his proposition that the cross-examination of Moore needed to occur in conjunction with the case at bar. An appellant is required to cite authority in support of propositions. *People v Kelly*, 231 Mich. App. 627, 640-641; 588 N.W.2d 480 (1998). Thus, this issue has not been properly presented for appellate review. *Id*. at 640. Nevertheless, the Confrontation Clause merely requires that defendant have the opportunity to cross-examine the witness and, here, defendant had the opportunity and did cross-examine Moore during the preliminary examination in the previous case. *Crawford*, 541 U.S. at 53-54. Thus, defendant's argument that the Confrontation Clause was violated has no merit; there was no plain error. *Carines*, 460 Mich. at 763.

(Mich. Ct. App. Op., ECF No. 11-17, PageID.1172-1173.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to

18

question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)).  But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony.  *Id.* at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent.  *Id.* at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).  Thus, Petitioner cannot show that the Michigan appellate court's determination that the preliminary examination transcript was properly admitted is contrary to, or an unreasonable application of, clearly established federal law.

Petitioner also argues that the transcript should not have been admitted because it did not meet the requirements of Michigan Rule of Evidence 804(b)(1).  The Michigan Court of Appeals disagreed:

> In addition, with regard to MRE 804(b)(1), we conclude that defendant had a similar motive in questioning Moore during the previous case, which was to establish that defendant was the perpetrator in the previous case, and clearly exercised his opportunity to develop Moore's testimony through cross-examination.  MRE 804(b)(1); *People v Farquharson*, 274 Mich. App. 268, 278; 731 N.W.2d 797 (2007).  Thus, Moore's hearsay statements were admissible pursuant to MRE 804(b)(1).

(Mich. Ct. App. Op., ECF No. 11-17, PageID.1173.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under

state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.

Here, the Michigan Court of Appeals concluded the evidence was properly admitted under Michigan law.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Thus, this Court is bound by the state appellate court's determinations that the evidence was admissible under the state rules.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

The Court has already considered whether admission of the preliminary examination testimony might run afoul of the Confrontation Clause, and it does not.  Additionally, there is nothing inherent in the admission of hearsay testimony that offends fundamental principles of justice.  In fact, "[t]he first and most conspicuous failing in [arguing that hearsay testimony

violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause.  That by itself makes it difficult to conclude that the state court of appeals' decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

Petitioner also tries to bring the admission of the preliminary examination testimony within the bounds of habeas cognizability by arguing that his counsel's failure to object to the hearsay testimony was ineffective assistance and, thus, unconstitutional.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The state appellate court's determination that the preliminary examination testimony was properly admitted under the Michigan Rules of Evidence conclusively resolves that issue.  As a result, any objection counsel might have raised on that ground would have been futile. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, it could not be ineffective assistance for counsel to forego raising that objection.

None of Petitioner's attacks on the admission of the preliminary examination testimony have merit.  The court of appeals' rejection of his claim is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on the claim.

### C.    Additional instances of ineffectiveness

In Petitioner's first habeas issue, he argues that counsel was ineffective for failing to investigate an alibi witness and for failing to impeach the testimony of Corey Riggs.  Petitioner raised these issues for the first time in his first motion for relief from judgment.  The trial court refused to consider the issues because Petitioner had failed to demonstrate "actual prejudice" from counsel's failure to pursue these issues and, therefore, under Michigan Court Rule 6.508(D)(3), Petitioner's failure to raise them on direct appeal precluded further consideration of them.  (Grand Traverse Cty. Cir. Ct. Order, ECF No. 11-16, PageID.1170-1171.)    Respondent argues that Petitioner's failure to raise the issues on direct appeal and the trial court's consequent refusal to consider them is a procedural default that precludes review by this Court.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See*

22

*Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536.  A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup*, 513 U.S. at 327).  The undersigned has already concluded that Petitioner has failed to provide any new evidence of his innocence and, as set forth below, that conclusion remains unaffected by his alibi defense or the proposed impeachment of his co-defendant.

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v.*

*Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

"'[T]he adequacy of state procedural bars to the assertion of federal questions . . . is not within the

State's prerogative finally to decide; rather adequacy is itself a federal question.'"   *Cone v. Bell*,

556 U.S. 449, 465 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (other internal

quotations omitted).   The Sixth Circuit has recognized that Michigan Court Rule 6.508(D)(3) is

"an independent and adequate state ground sufficient for procedural default."  *Amos v. Renico*, 683

F.3d 720, 733 (6th Cir. 2012).

   To determine whether Petitioner has been denied relief based on a procedural

default, we look to the last "reasoned judgment rejecting the [federal] claim."   *Ylst*, 501 U.S. at

803.  The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly

and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's

conviction."  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Neither the Michigan Supreme Court

nor the Michigan Court of Appeals specifically mention Mich. Ct. R. 6.508(D)(3) in their form

orders denying Petitioner's applications for leave to appeal.

   In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in

an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking Mich.

Ct. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. at 803.  Here, the

Michigan Court of Appeals and the Michigan Supreme Court cited Michigan Court Rule 6.508(D),

but not specifically Michigan Court Rule 6.508(D)(3), when those courts respectively upheld the

lower court's refusal to consider Petitioner's additional claims.  (Mich. Ct. App. Order, ECF No.

11-19, PageID.1363; Mich. Order, ECF No. 11-20, PageID.1426.)  Such form orders are presumed

to uphold or reject the last reasoned decision below.  *Guilmette*, 624 F.3d at 291-92 (citing *Ylst*,

501 U.S. at 803).  As a result, absent an explained decision from a lower Michigan court applying

the procedural prohibition of Rule 6.508(D)(3), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of Mich. Ct. R. 6.508(D).

In *Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018), the Supreme Court held that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst*, and "look through" the unexplained order to the last reasoned decision of the state court. This applies beyond determining whether the affirmance was based on a procedural default or the merits. "[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst*, 501 U.S. at 803. Accordingly, this Court may rely on the procedural bar that prompted the trial court to deny Petitioner's request for relief.

Identifying the procedural default does not end the inquiry. The Court may consider Petitioner's habeas issues on their merits if Petitioner establishes cause for the default and resulting prejudice. As cause, Petitioner offers nothing more than the cause rejected by the trial court: the ineffective assistance of his appellate counsel.

For errors by counsel to serve as cause to excuse a procedural default, Petitioner must show that counsel was ineffective in the constitutional sense. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted)). Therefore, under *Strickland*, Petitioner must show that his appellate counsel was professionally unreasonable in failing to raise the issue of trial counsel's failure to pursue the alibi and impeachment issues urged by Petitioner, and that Petitioner suffered prejudice from appellate counsel's failure to raise the issues. The reasonableness of appellate counsel's failure to raise trial counsel's ineffectiveness,

in turn, depends on the merit of Petitioner's claim that trial counsel was ineffective for failing to pursue the alibi and impeachment issues.  Under *Strickland*, therefore, Petitioner must also show that trial counsel was professionally unreasonable in failing to pursue the alibi and impeachment issues and that Petitioner suffered prejudice as a result.  If, indeed, Petitioner can clear those hurdles, he will not only have established cause, but the Court would have already twice determined that Petitioner suffered prejudice; thus, with cause and prejudice established, Petitioner would be able to avoid the procedural bar.

The trial court resolved the matter on the prejudice prong:

> [T]he court rule . . . does provide that the Defendant must show "actual prejudice" from the irregularities he alleges which means that, "(i) in a conviction following trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."  The Court of Appeals has already observed . . .: "In addition, defendant's substantial rights were not affected because there was overwhelming evidence of defendant's guilt."  Given the victim's unequivocal statement that she recognized the Defendant Kovary's voice during the assault, the co-defendant's direct testimony that Mr. Kovary was involved in the assault with him, and the evidence of Mr. Kovary's previous assault of another woman in her own bed in a similar way on [a] previous occasion, the Court of Appeals' conclusion seems amply supported.  This Court therefore concludes that the Defendant would not have had a "reasonably likely chance of acquittal" had his mother testified he was actually in bed and had Mr. Bellman testified about his alleged conversation with co-defendant Corey Riggs.

(Grand Traverse Cty. Cir. Ct. Order, ECF No. 11-16, PageID.1171.)  The Sixth Circuit has recognized that the cause-and-prejudice standard employed by the state court to determine when state courts will excuse a procedural default is not necessarily the same as the federal standard, even though both standards use the same, or nearly the same, words.  *Benton v. Brewer*, 942 F.3d 305, 308 (6th Cir. 2019).  Therefore, the state trial court's determination of prejudice is not entitled to AEDPA deference; however, in this instance, the trial court's analysis is well-founded on the record and it is persuasive.

To fully appreciate the lack of prejudice to Petitioner, it is necessary to explore the nature of his alibi defense and impeachment arguments.  Petitioner's alibi witness was his mother, Sandra Galbraith, who claimed:

> On 09/29/2009, around 3:15-3:30 a.m. after I look at the clock, I got up to get ready for work while observing my daughter-in-law Karen and my grand-daughter Sierra in Sierra's bedroom sleeping.  I seen my son Charles Elmer Kovary in his master bedroom sleeping.

(Affid., ECF No. 11-15, PageID.1148.)  Petitioner argues that Galbraith's statement is exculpatory. The record does not support his argument.

Based on the testimony of Riggs and the victim, the timeline of events for the early morning hours of September 29, 2009, was not firmly established.  Riggs testified that he dropped Petitioner off at Petitioner's home around 3:15.  (Trial Tr. III, ECF No. 11-12, PageID.909.)  Riggs acknowledged that he might have told someone that he dropped Petitioner off around 1:30 a.m. instead.  (*Id*., PageID.916.)  Michael Bellman, a person who was housed at the Grand Traverse County Jail when Riggs was housed there, testified that Riggs told Bellman that Riggs dropped Petitioner off around 1:00 a.m..  (*Id*., PageID.950-958.)  Riggs denied talking to Bellman about anything.  (*Id*., PageID.922.)

The victim testified that she called her mother's house after the attack.  Petitioner's counsel elicited testimony from the victim that she made that call at 3:45 a.m.  (Trial Tr. II, ECF No. 11-11, PageID.745.)  That is the extent of the timeline from the testimony of Riggs and the victim.  Petitioner did not testify.  The witnesses were not definitive in their statements regarding timing.

The problem with Petitioner's proposed alibi testimony is that Riggs could have dropped Petitioner off at 3:15 a.m. and Petitioner could have been in bed sleeping by 3:30 and the victim could have made her phone call thereafter.  Petitioner's mother's testimony simply does not

contradict the events described by Riggs and the victim.  Under those circumstances, Petitioner suffered no prejudice from trial counsel's failure to present the "alibi" testimony or from appellate counsel's failure to raise trial counsel's failure.  Thus, Petitioner has failed to demonstrate cause or prejudice to excuse his procedural default and this Court's consideration of the issue is barred.

Petitioner's impeachment argument is no more compelling.  Petitioner provides affidavit testimony from Michael Bellman stating: (1) Riggs told Bellman that Riggs dropped Petitioner off around 1:00 a.m.; and (2) Riggs told Bellman that Riggs knew that Petitioner had been previously convicted of home invasion and that Riggs was going to use that information to frame Petitioner.  (Aff., ECF No. 11-15, PageID.1150.)  Bellman testified in detail regarding the first issue.  Petitioner faults his counsel for not bringing out the second issue; but, counsel made the attempt.  When counsel attempted to expand the inquiry to explore how Riggs was going to plea bargain his way to a better outcome by blaming Petitioner, the prosecutor objected.  (Trial Tr. III, ECF No. 11-12, PageID.952.)  The prosecutor argued that Riggs had denied the fact of the conversation and that Petitioner's counsel could provide extrinsic evidence to demonstrate the fact of the conversation; but, further inquiry into the content of Riggs's statements to Bellman would be hearsay.  The trial court held a bench conference off the record.  Thereafter, counsel confined his inquiry to the facts surrounding the conversation.

Although the record does not show how the trial court ruled on the objection, it is apparent from the conduct of counsel that the court sustained the objection.  Under that circumstance, Petitioner has failed to show that trial counsel's failure to explore the issue further was professionally unreasonable or that appellate counsel was professionally unreasonable for failing to raise trial counsel's alleged failure.

Even if trial counsel had acted unreasonably when he failed to pursue the matter further, Petitioner cannot show prejudice.  Prejudice requires the Petitioner to show that the alleged error "worked to his *actual* and substantial disadvantage."  *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'"  *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).

Bellman's eleventh-hour statement regarding Riggs's confession to framing Petitioner is far less convincing than the victim's statements that she was certain that Petitioner was the man who raped and beat her.  Indeed, Bellman's statement, reporting that Riggs had dropped off Kovary at home at 1:00 a.m., is, for all intents and purposes, a confession that Riggs framed Kovary.  The juror heard that "confession."  The jurors obviously rejected the credibility of Bellman's report when they found Petitioner guilty.  Adding a little more detail to that report— detail that is also flatly contradicted by the testimony of the victim ***and*** Riggs—would not be sufficient to sway the jury.

The state appellate court concluded that "there was overwhelming evidence of [Petitioner's] guilt."  (Mich. Ct. App. Op., ECF No. 11-17, PageID.1173.)  The trial court echoed that conclusion in rejecting Petitioner's post-appeal motion for relief.  (Grand Traverse Cty. Cir. Ct. Order, ECF No. 11-16, PageID.1171.)  Those determinations—well-supported determinations on this record—foreclose a finding that Petitioner suffered any prejudice as a result of counsel's failures to pursue or raise the alibi or impeachment issues.  Therefore, Petitioner's procedural default precludes habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the

Court not certify that an appeal would not be taken in good faith.


Dated:    December 30, 2019                              /s/ Maarten Vermaat
                                                                                                                        
                                                                      Maarten Vermaat
                                                                      United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).